## C. W. NANCE v. S. B. HOPKINS.

1. TAX SALES. *Record not to show preliminary proceedings.* The statutes relating to and regulating the sale of land for taxes do not require the record to show the preliminary proceedings necessary to valid taxation, as, for example, that all the property in the county was assessed, that the assessors were elected and qualified, etc.

2. SAME. *Description of property.* A substantial compliance with the requirements of the statutes in the description of the property is sufficient in the assessment book and the report of sale.

3. SAME. *Penalties.* The Legislature has the power to impose a penalty for the non-payment of taxes to be enforced with the taxes, and the penalty of 12 per cent. imposed by the act of 1873, ch. 118, sec. 61 was not repealed before the assessment of 1875, and the sale of lands for the unpaid taxes of that year.

4. SAME. *Sale on day required by law.* If the report of the tax collector and the judgment of the circuit court agree that the land in controversy was sold on the proper day, a discrepancy between them on this point as to other lands will not avoid the sale.

5. SAME. *Advertisement* Under the act of 1873, ch. 118, sec. 62, it was not necessary that the advertisement of the sale of land for taxes should show the place of sale, the advertisement being in accordance with the form prescribed by the statute.

6. SAME. *Beginning corner.* It was not necessary for the tax collector in offering the land for sale to indicate to the bidders the beginning corner of the lot or tract from which the least quantity was to be run off, if the bidder offered to pay the taxes for less than the whole lot or tract.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

T. M. STEGER for complainant.

M. M. BRIEN, SR. for defendant.

COOPER, J., delivered the opinion of the court.

The bill was filed to enjoin the execution of a writ of possession issued in favor of Hopkins for a lot in Nashville bought by him at a sale of lands for unpaid taxes, made on July 3, 1876. The rights of the parties turn upon the validity of the title acquired by the sale. The chancellor was of opinion that the sale was not made in accordance with the statute, and granted the relief sought. The defendant appealed.

The complainant attacks the record of the circuit court, under which the writ of possession is issued, upon a number of grounds. He says, for example, that the record is defective in failing to show that all the property in the county was assessed, that the assessors were elected or appointed as required by law, that the oath prescribed was administered to the assessors, etc., etc. But the act of 1873, ch. 118, under which the sale was made, does not require the record to show any of these preliminary matters. The tax collector is merely required, by sec. 68, to certify the sales to the circuit court of the county, and that court is directed to enter said sales of record as a valid judgment, vesting title to the property so sold in the purchaser, and grant writs of possession. Section 69 is: " That no sale shall be invalid because the number of acres or the size and dimensions of any tract, lot or parcel of land has not been precisely named, or

the amount of the valuation or tax not precisely given, nor because the property has been assessed and advertised in the name of a person who did not own the same, nor because the same was assessed and advertised to unknown owners, nor because a distress warrant did not issue, nor on account of any objection or informality merely technical; but all such sales shall be good and valid if the taxes, penalties and costs were actually due and unpaid, and the advertisement, sale and certificate of sale to the circuit court shall have been made as provided by this act."

The complainant does not assert in his bill, nor does he undertake to prove that any of the preliminary requisites to a sale of the land for taxes were not complied with, nor that the taxes, penalties and costs were not due and unpaid at the time of the sale. He does say that the description of the property in controversy in the assessment and collector's report was insufficient to identify it under the act of 1875, ch. 81, sec. 2, which amended the act of 1873. That section requires the assessor, if the land be in a town, to set out the present number of the lot, the number of front feet, and the depth thereof, and the assessed value. The description in the collector's report is as follows:

| District. | Name of Owner. | Lots, acres, description. |
|---|---|---|
| 1st Dist. 7th | Stephens, Dr. J. B. | ·10, 11 Market " " 30 " " 188 |

The valuation, taxes, penalties, etc., follow properly. This, we think, is a substantial compliance with the act, and a sufficient description to identify the lot. The act of 1873, ch. 118, sec. 6, provided that the

number of the lot, name of the street and front feet should be given, adding: "But a failure so to assess according to this section, shall not vitiate sales of land for taxes." The acts of 1873 and 1875 are in *pari materia,* and must be construed together as parts of one system.

It is next insisted that the judgment and sale were for penalties, as well as for taxes and costs, and that a penalty cannot be imposed by a ministerial officer. But the penalty of 12 per cent. allowed by section 61 of the act of 1873, is the only penalty added to the taxes, and was not repealed at the date of the sale. The penalty is given by the statute, and this court has held that the Legislature has the power to impose a penalty for the non-payment of taxes, and to authorize the penalty to be enforced with the taxes: *Myers* v. *Park,* 8 Heis., 550.

It is said that the judgment of the circuit court does not agree with the report of the collector in this, that the collector says he commenced the sale on the 3d of July, and, after selling part of the lands, continued the sale to the next day, and that being a holiday he again continued the sale to the 5th, when he completed the sale, whereas the judgment asserts that each piece of property was sold on July 3d. But the report and the judgment agree that the lands in the 1st district, including the lot in controversy, were sold on July 3, and that is sufficient for the purposes of this case.

It is again said that the collector does not show that he advertised either the date or place of sale.

But the collector commences his report with the advertisement, which follows the form prescribed by the act of 1873, ch. 118, sec. 62, and does give the time of sale. The place of sale is fixed by the statute, section 64, and is not required by the act, although it is by a subsequent act, to be stated in the advertisement. And the body of the certificate does state that the collector advertised said property for sale once a week for three consecutive weeks previous to the day of sale, to-wit, the first Monday, being the 3d day of July, 1876, in a newspaper published in the county, naming the paper.

Another point made is that the collector did not indicate to the bidder the corner of the lot which he considered the beginning corner, so that no one knew what part of the lot he was going to offer, nor did he offer any particular part. The statute, sec. 65, is: "That no tract, lot or parcel of land shall be sold for less than the amount of taxes, penalties and costs due thereon; and *that* bidder shall be the purchaser who will pay the amount due for the least quantity of said lot, tract or parcel of land to be run off from the beginning corner, and running with at least one line of the tract." The collector reported to the circuit court that on the first Monday of July, 1876, he sold the property described in the first, second, and certain other districts named, and "sold the smallest amount of each lot, tract or parcel of land that any person would take and pay the taxes, penalties and costs, and the parties hereinafter named were the purchasers in each case respectively, agreed and did pay the taxes,

penalties and costs for the least quantity of said lot or parcel of assessed real estate run off from the beginning corner, and running with at least one line of said land as fully shown herein." The list of the lands sold shows that the whole of the lot in controversy was knocked off to the defendant.

The report of the collector does not show that he indicated to the bidders the corner of the lot or tract which he considered the beginning corner. But the statute does not require him to make such a statement or indication. The direction to him is to accept as the purchaser *that* bidder who will pay the amount due for the least quantity of the lot or tract to be run off from the beginning corner, etc. It is his duty, therefore, to offer the least quantity of the land for sale for which the bidder will pay the amount due. But it is for the bidder to / say for what quantity of the land he would pay the tax, as one-half, one-fourth, or the like, to be afterwards ascertained by running off the quantity in the mode prescribed by the statute. The law has not imposed upon the collector the task of ascertaining in advance of the sale the beginning corner of the several tracts, nor is he authorized to designate any corner from which the line shall be run. The quantity can only be determined by running from "*the* beginning corner," which would be determined by the muniments of title of the tax payer. There would be a difficulty in executing a writ of possession in such a case for which the statute has made no provision. But the same difficulty in fact, if not in degree, would exist if the collector undertook to designate a

corner, with the additional complication that he might designate the wrong corner. It is enough in the present case to say, that the statute does not require the collector to specify the beginning corner.

The chancellor's decree must be reversed, and the bill dismissed with costs.